**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**BRITNEY ENCINIAS,**

  **Plaintiff,**

  **vs.**                                                                                  **Civ. No. 20-1005 WJ/SCY**

**JUSTIN SANDERS, CLAYTON
TRUJILLO, UBALDO HERNANDEZ,
ROBERT GONZALES, VICENTE
FERNANDEZ, JOHNNY TRUJILLO,
SHAWN ROSENBARKER, MARIANNA
VIGIL, and THE NEW MEXICO
CORRECTIONS DEPARTMENT,**

  **Defendants.**

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SANCTIONS**

Does a court order "staying discovery" forbid parties in the lawsuit from obtaining

information through means other than the Federal Rules of Civil Procedure during the pendency

of the discovery stay? Here, Defendant Hernandez asserted qualified immunity and requested a

stay of discovery. After the Court granted his motion to stay, which also applied to Defendant

New Mexico Corrections Department ("NMCD"), counsel for Plaintiff obtained records from

NMCD under New Mexico's Inspection of Public Records Act ("IPRA"). Some of the records

Plaintiff requested from NMCD under IPRA were almost identical to records the Court held

Plaintiff could not obtain from NMCD through Federal Rule of Civil Procedure 56(d). Defendant

Hernandez argues that Plaintiff's conduct violated the Court's order staying discovery and that

the Court should impose "an appropriate and meaningful sanction" against Plaintiff for this

violation. Doc. 102 at 9.[1] Addressing this sanctions motion necessarily requires the Court to consider legal precedent regarding the extent to which a party can obtain information outside the Federal Rules of Civil Procedure during a stay of discovery. Whether Plaintiff's understanding of restrictions contained in the discovery stay order was reasonable must be decided with reference to language the Court used in its discovery stay order, existing legal precedent, standard practice, and the purpose of staying discovery until the issue of qualified immunity is resolved. Having considered each of these factors, the Court finds that Plaintiff was not placed on reasonable notice that the Court's discovery stay order barred her from independently obtaining documents through IPRA.[2] As a result, the Court finds that Plaintiff did not violate its discovery stay order and denies Defendants' Motion for Sanctions Based on Violation of Court Orders. Doc. 102.

## BACKGROUND

Plaintiff Britney Encinias alleges that while she was incarcerated at Springer Correctional Center, corrections officer Justin Sanders raped her. Doc. 70 ¶¶ 13-19 (amended complaint). She further asserts that her allegation of rape was reported to several supervisors (Clayton Trujillo, Ubaldo Hernandez, Robert Gonzales, and Johnny Trujillo), officers with investigatory powers (Shawn Rosenbarker and Vicente Fernandez), and the warden (Mariana Vigil), but no action was taken against Defendant Sanders. *Id.* ¶¶ 21-22. She filed suit in federal court on October 1, 2020. Doc. 1.

---

[1] In his motion, Defendant states that dismissal of the case against him might be an appropriate sanction. Doc. 102 at 9. During oral argument, however, Defendant acknowledged that such a sanction would be too harsh. Doc. 130 at 52:13-18 (hearing transcript); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) ("dismissal represents an extreme sanction appropriate only in cases of willful misconduct").

[2] The Court need not decide what standard of notice is required, i.e. reasonable notice, clear indication, etc., because even applying a lax standard, reasonable notice, the Court's stay order and case law did not place Plaintiff on notice.

After Defendants filed their answers, the Court entered a scheduling order and the parties began conducting discovery. Doc. 33. Shortly thereafter, several supervisory defendants (including Ubaldo Hernandez) filed motions for summary judgment based on qualified immunity. Docs. 42, 49, 50, 78. They likewise filed motions to stay discovery pending resolution of the qualified immunity motions. Docs. 44, 52, 79. Plaintiff filed responses to the summary judgment motions requesting additional discovery under Rule 56(d). Docs. 55, 62, 63, 86. The presiding judge, Chief Judge Johnson, stayed discovery pending rulings on the motions to stay. Doc. 80. On April 27, 2021, the Court granted the motions to stay discovery, staying all discovery pending resolution of Defendants' qualified immunity motions, and took under advisement Plaintiff's Rule 56(d) requests. Docs. 84, 88. After holding a hearing, the Court granted Plaintiff's Rule 56(d) discovery requests in part, allowing Plaintiff to conduct limited, specific discovery before responding to the summary judgment motions. Doc. 96. Rule 56(d) discovery was to be completed by July 5, 2021 and all other discovery remained stayed pending resolution of the qualified immunity motions.

On July 9, 2021, while discovery was stayed, Plaintiff's counsel sent IPRA requests to NMCD, seeking "electronic copies of all employee timesheets, daily rosters, and any other Springer Correctional Center records that show the shifts, dates, and/or locations that Lt. Ubaldo Hernandez worked in that facility from September 28, 2018 to October  31, 2018," and "electronic copies of all daily rosters and other Springer Correctional Center records indicating where and whether Corrections Officer Justin Sanders was working in the facility for all dates

from June 1, 2018 to February 22, 2019." Doc. 102-1.[3] These IPRA requests motivated

Defendant Hernandez to file the present motion for sanctions. Doc. 102.

## DISCUSSION

Defendant Hernandez argues that Plaintiff's IPRA requests are an attempt to end-run this

Court's discovery stay orders and, as such, requests that the Court sanction Plaintiff.[4] In

addressing this argument, the Court will look at the explicit language of the stay order and its

implicit communication, as well as case law, standards of practice, and the purpose of the stay

order, to determine if Plaintiff had reasonable notice that her IPRA requests would violate the

stay order.

1. **The Court's discovery stay order contains no explicit language prohibiting Plaintiff from obtaining documents through IPRA.**

Although the parties disagree about whether a federal court can legally prevent a party

from obtaining information under IPRA, they agree that the proper course for challenging an

order is to appeal it, not disregard it. Thus, a party is not free to simply ignore an order restricting

the party from filing an IPRA request, even if the party believes the court erred in issuing the

order.[5] Instead, the party's proper course is to appeal that order. The starting point for the present

---

[3] Defendant points out that Plaintiff has submitted 13 other IPRA requests, though the present motion is directed only at Plaintiff's July 9, 2021 requests. Doc. 102 at 5.

[4] The IPRA requests were submitted by Andrea Mora, a legal assistant in law firm of Kennedy, Hernandez, and Associates, the firm that represents Plaintiff. Doc. 102-1. Because the Court finds Plaintiff had insufficient notice that the IPRA requests could violate the Court's stay order, the Court assumes, without deciding, Ms. Mora was acting as Plaintiff's agent when she submitted the IPRA requests. The Court also does not need to address the degree to which Plaintiff's lawsuit served as Ms. Mora's motive for submitting the requests, or whether that matters.

[5] A federal court barring a federal litigant from obtaining documents through a state IPRA request would also be difficult to enforce. Any person for any reason can make an IPRA request.

analysis, therefore, is not whether the Court has authority to restrict a party from obtaining information under IPRA. Instead, the starting point is review of the language in the Court's discovery stay order. Right or wrong, if that order prohibited Plaintiff's counsel from seeking information related to this case under IPRA, Plaintiff is subject to sanctions.

On May 7, 2021, the Court granted the Supervisory Defendants' motion to stay discovery, taking under advisement Plaintiff's Rule 56(d) requests. Doc. 88 at 1-2 ("[d]iscovery is stayed . . . subject to the Court's ruling on Rule 56(d) discovery"). The Court then allowed some Rule 56(d) discovery but, as Defendant Hernandez points out, specifically denied Plaintiff's request that NMCD provide Defendant's timesheets for October 2018. Doc. 112 at 3-4. Thereafter, Defendant complains, Plaintiff used IPRA to obtain from Defendant NMCD, among other things, Hernandez's timesheets for the period between September 28, 2018 and October 31, 2018. *Id*. By obtaining from Defendant NMCD the exact same information the Court told Plaintiff she could not obtain from Defendant NMCD, Defendant Hernandez reasons, Plaintiff violated the Court's discovery stay order.

It is true that some of the information Plaintiff thereafter requested and obtained through IPRA is identical to information the Court prohibited Plaintiff from obtaining through Rule 56(d). But the Court's Order did not specifically bar Plaintiff from using a mechanism outside the Federal Rules of Civil Procedure to obtain information not available through the Federal Rules of Civil Procedure.[6] The compulsory mechanism through which Plaintiff sought the

---

Thus, as long as a litigant would not be using a friend or family member as an agent, a family member or friend could make the exact same IPRA request as the litigant and then provide the information received to the litigant.

[6] Plaintiff argues the Court could never legally bar her counsel from independently obtaining information through IPRA. Doc. 130 at 88:10-22, 89:2-5. Such an absolute rule can be called

information was Rule 56(d); accordingly, the Court limited the analysis in its Rule 56(d) Order to whether that mechanism, Rule 56(d), could be invoked to compel Defendant NMCD to provide the information sought. The Court's ruling that Rule 56(d) did not provide such a mechanism did not place Plaintiff on reasonable notice that she could not obtain the same information through some other compulsory mechanism unrelated to the Federal Rules of Civil Procedure.

By limiting the information Plaintiff could obtain under Rule 56(d), the Court's May 20 Rule 56(d) Order necessarily incorporated the Court's May 7 Order that stayed discovery and that took Plaintiff's Rule 56(d) requests under advisement. In its May 7 Order, the Court granted Defendants' motion to stay (filed as Doc. 79) and ordered that "[d]iscovery is stayed pending resolution of Defendants' Motion for Summary Judgment as to Count IV Based on Qualified Immunity (Doc. 78), subject to the Court's ruling on Rule 56(d) discovery." Doc. 88 at 1-2. The Court did not indicate whether the phrase "discovery is stayed" applied just to the gathering of information under the Federal Rules of Civil Procedure or whether it also applied to the gathering of information about the case through any mechanism. Thus, the Court's discovery stay order contained no explicit language to put Plaintiff on notice that she could not obtain information through IPRA during the discovery stay.

---

into question through various hypotheticals. For example, if NMCD asserted privilege in certain documents, the Court, in an attempt to prevent the unwitting release of documents it might deem privileged, might consider forbidding Plaintiff from filing an IPRA request while the privilege issue was pending. Whether the Court would be overreaching by restricting a plaintiff from filing an IPRA request in situations such as this, however, is beyond the scope of today's Order. The present Order makes no attempt to define the parameters of when it would be appropriate to prevent a party from obtaining information through an independent mechanism, whether it be IPRA, the interview of a potential witness, or other means.

**2. The Court's discovery stay order did not implicitly place Plaintiff on notice that she could not obtain documents under IPRA.**

Although the discovery stay order did not explicitly bar Plaintiff from obtaining information under IPRA, Defendant argues that Plaintiff should have understood the discovery stay order as containing such a bar. Plaintiff counters that discovery in a federal case is governed by the Federal Rules of Civil Procedure and so a federal court's discovery stay order means no party may use the Federal Rules of Civil Procedure as a mechanism to obtain discovery until the federal court lifts its stay of discovery. It does not mean, however, that a party is completely barred from obtaining information about the case through means outside the Federal Rules of Civil Procedure.

At oral argument, Defendant conceded that Plaintiff is correct in part: a court's discovery stay order does not *completely* bar a party from obtaining information about the case through use of a mechanism outside the Federal Rules of Civil Procedure. For instance, Defendant agreed with the Court that a discovery stay order would not prevent a party from doing an internet search about what the weather was like on the day of an incident that led to a lawsuit. Doc. 130 at 23:14-18, 24:11-19. Similarly, Defendant noted that if he had a case in which the condition of a public sidewalk was at issue, he could go look at that sidewalk even during the pendency of a discovery stay. *Id.* at 44:12-21. Thus, the foundation of Defendant's motion for sanctions is not that the Court's order barred Plaintiff from obtaining *any* information about her case while the stay order was in place. Instead, Defendant's motion for sanctions is based on line drawing— even though Defendant concedes Plaintiff permissibly could obtain some information from some sources through some mechanisms, he argues she crossed the line when she obtained this information from this source through this mechanism.

Although the effective function of our judicial system depends on a judge's willingness to hold accountable parties who knowingly violate a court order by crossing a line the Court has clearly set, the Court is not inclined to sanction a party who crosses a line the party cannot reasonably see. The Court at oral argument posed numerous hypotheticals and questions devoted to determining the location of the line dividing what and how a party *may* obtain information during a discovery stay from what and how a party *may not* obtain information during a discovery stay. Plaintiff argued that the line is drawn at the border of the Federal Rules of Civil Procedure—a court's discovery stay order does not prevent a party from obtaining discovery outside the Federal Rules of Civil Procedure. Defendant disagreed but was unable to articulate an alternative location or test for the precise location of the line. Nonetheless, he argues that when the Court forbids a party from obtaining information through one mechanism (Rule 56(d) in this case), a party clearly crosses the line when it then uses a different mechanism to obtain the same information. The Court disagrees that Plaintiff crossed a line so clearly demarcated that sanctions are warranted. Restricting Plaintiff from obtaining the information she sought through Rule 56(d) did not implicitly forbid Plaintiff from obtaining the same information through some other mechanism. Nor, as discussed in the next section, did the weight of legal authority on the topic provide Plaintiff reasonable notice that her IPRA request would violate the Court's discovery stay order.

3. **Nothing contained in New Mexico's interpretation of IPRA, federal legal authority, the weight of cases on the topic, the purpose of a qualified immunity stay, or standard practice provided reasonable notice to Plaintiff that independently obtaining information about her case through IPRA would violate the Court's discovery stay order.**

Because nothing in the Court's discovery stay order explicitly or implicitly informed Plaintiff that she could not independently obtain information about her case through IPRA,

language in the Court's order, standing alone, is insufficient to subject Plaintiff to sanctions. However, if New Mexico's interpretation of IPRA, federal legal authority, the weight of cases on the topic, the purpose of a qualified immunity stay, or standard practice clearly indicated to Plaintiff that independently obtaining information about her case would violate the court's discovery stay order, Plaintiff would still be subject to sanctions.

Defendant, however, has cited no case, and the Court is aware of none, saying that rejecting a party's motion to obtain information through Federal Rule of Civil Procedure 56(d) is tantamount to forbidding that party from obtaining the same information through an independent state statute. The reasonableness of Plaintiff's belief that the Court's order did not apply to her gathering of information outside the Federal Rules of Civil Procedure also gains support from state law and federal cases addressing the use of IPRA and other mechanisms outside the Federal Rules of Civil Procedure to obtain information about a case.

### a. New Mexico's interpretation of IPRA supports Plaintiff's view that the Court's discovery stay order did not bar her IPRA request.

New Mexico's IPRA statute states that any individual has a right to request records, regardless of his or her status as a litigant. *See* NMSA § 14-2-5 ("[I]t is declared to be the public policy of this state [] that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees."); *id.* § 14-2-8 ("Any person wishing to inspect public records may submit an oral or written request to the custodian."). Indeed, individuals are not required to state their reasons for requesting inspection of records. *Id.* § 14-2-8(C). Further, the New Mexico Supreme Court has reaffirmed that "[u]nder IPRA, '[e]very person has a right to inspect public records,' . . . limited only by the Legislature's enumeration of certain categories of records that are excepted from inspection." *Republican Party of N.M. v. N.M. Taxation & Rev. Dep't*, 2012-NMSC-026, ¶ 13, 283 P.3d 853.

Defendant acknowledges that a discovery stay in a federal case will not prevent New Mexico state courts from allowing a party in the federal case to obtain information under IPRA, even while a federal order staying discovery is in place. Doc. 130 at 28:23 to 31:20. Federal and state district court proceedings in *Lowe v. New Mexico ex rel. King* provide a case on point. The *Lowe* line of cases arose after a group of plaintiffs sued the New Mexico Attorney General in federal court and the court granted a motion to stay proceedings, including discovery, based on an Eleventh Amendment immunity defense. *See Lowe v. New Mexico ex rel. King*, No. Civ. 10-315 JH/LFG, 2010 WL 11619171 (D.N.M. Sept. 28, 2010) ("*Lowe I*"). While that stay was pending, the plaintiffs' attorney sent an IPRA request to the defendant Office of the Attorney General seeking information "clearly relevant to the claims and defenses in this case." *Id.* at *2. The defendant asked the federal court to sanction the plaintiffs for violating the stay order. *Id.* at *2. Magistrate Judge Lorenzo Garcia agreed with the defendant, holding that although the plaintiffs may have a right under IPRA to seek information, the "exercise of that right at the present stage of this case is in direct defiance of this Court's order." *Id.* at *3.[7] On objection from the plaintiffs, the presiding District Judge, Judge Judith Herrera, found that Judge Garcia's order was not clearly erroneous or contrary to law. *See Lowe v. New Mexico ex rel. King*, No. Civ. 10-315 JCH/LFG, 2011 WL 13286156 (D.N.M. Jan. 3, 2011).

In light of the federal stay order, the Attorney General's Office denied the plaintiffs' IPRA request, explaining that, "[t]his request is being denied as these records involve a current lawsuit and appear to circumvent the discovery process and the current Order Staying Discovery." *Faber v. King*, 2015-NMSC-015, ¶ 4, 348 P.3d 173. The plaintiffs' counsel then

---

[7] To reach this holding, the court looked to exceptions under IPRA. As discussed in Section 3(b) below, those exceptions no longer apply.

filed a complaint in state court alleging a wrongful denial of his statutory rights under IPRA and "[t]he state district court found that the stay of discovery entered by the federal court did not preempt the statutory rights granted to New Mexico citizens by IPRA," and awarded damages. *Id.* ¶ 4. The Attorney General appealed the award of damages, but not the determination that it violated IPRA. *Id.* ¶ 5.

Faced with this case law, Defendant's argument is not that federal courts should try and control what state courts do. Instead, Defendant's argument is that federal courts can, and should, use sanctions to control what litigants in federal court do. Plaintiff's position, on the other hand, is that discovery stays in a federal case only limit parties from using the Federal Rules of Civil Procedure to obtain discovery. She argues federal courts cannot, and should not, limit parties before them from obtaining information through independent mechanisms such as IPRA. The Court need not resolve this dispute to decide the issues before it—whether Plaintiff's IPRA request violated the Court's discovery stay order and, if it did, whether Plaintiff should be sanctioned. What restrictions the Court *could have* placed on the gathering of information through mechanisms other than the Federal Rules of Civil Procedure is beside the point. The relevant question is whether language in the Court's Order or legal authority placed Plaintiff on reasonable notice that making an IPRA request would violate the Court's order and expose her to sanctions. Rather than supporting Defendant's position, New Mexico legal authority tends to support Plaintiff's position that it was reasonable for her to believe that the Court's discovery stay did not bar her IPRA request.

**b. Federal authority and the weight of cases also support Plaintiff's view that the Court's discovery stay order did not bar her IPRA request.**

The strongest decision Defendant cites in support of his position is District Court Judge William P. Johnson's opinion in *Martinez v. Camacho*, No. Civ. 08-1046, 2010 WL 11590674,

at *1 (D.N.M. Aug. 20, 2010) ("*Martinez-WJ*"). The *Martinez* plaintiffs sued three city and two

state law enforcement officers for various alleged civil rights violations. After the state

defendants asserted qualified immunity in a summary judgment motion, Magistrate Judge

Lorenzo Garcia stayed "all discovery" pending resolution of the summary judgment motion. *Id.*

at *1. In issuing this order, Judge Garcia noted that the discovery stay was necessary to "free

officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Martinez*

*v. Camacho*, No. 08-1046 WJ/LFG, Report and Recommendation, CM/ECF Doc. 98 at 4 (June

10, 2010) ("*Martinez-LG*") (*quoting Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J.

concurring in judgment)). Rejecting the suggestion that parties not asserting qualified immunity

could continue to engage in discovery, Judge Garcia further noted,

> [i]t is no answer to these concerns to say that discovery for petitioners
> [individuals entitled to a qualified immunity defense] can be deferred while
> pretrial proceedings continue for other defendants [those not entitled to assert
> qualified immunity]. It is quite likely that, when discovery as to the other parties
> proceeds, it would prove necessary for petitioners and their counsel to participate
> in the process to ensure that the case does not develop in a misleading or slanted
> way that causes prejudice to their position.

*Id*.

Despite Judge Garcia's comments about the need for all parties to participate in the

discovery process to ensure that the case does not develop in a misleading or slanted way that

causes prejudice to their position, three days after Judge Garcia entered his order, plaintiff's

counsel took the sworn, recorded statement of three city defendants, with their counsel present,

but without notice to the state defendants. *Martinez-WJ*, 2010 WL 11590674, at *1. The

plaintiffs then cited to a transcript of one of these recorded statements in support of their brief in

opposition to a motion for summary judgment and in support of their own motion for summary

judgment. *Id.* at *2. The state defendants moved for sanctions and Judge Garcia entered a Report

and Recommendation concluding that the plaintiffs' conduct in taking the statements was sanctionable because the statements were taken in violation of the stay order and without notice to counsel for the state defendants. *Id.*

At a hearing on plaintiffs' objections to Judge Garcia's Report and Recommendation, plaintiffs argued (as characterized by Judge Johnson) "that the taking of those sworn statements were themselves a voluntary exercise of free speech entitled to First Amendment protection, and that the recorded interviews of the City Defendants were not depositions and thus not conducted in violation of the Court's Stay Order on discovery." *Id*. Further, the plaintiffs asserted that the sworn statements obtained were tantamount to affidavits rather than depositions because the witnesses appeared voluntarily. *Id.* Therefore, the plaintiffs maintained, the interviews "were not prohibited by the Stay Order." *Id*. Judge Johnson acknowledged that "the interviews of the City Defendants lacked some of the hallmarks of a deposition in that they were not compulsory and a court reporter was not present to make a live record." *Id*. at 3. Nonetheless, Judge Johnson concluded "[t]he format of the recorded interview possesses characteristics of a discovery proceeding sufficient to suggest that the Stay Order was violated, if not technically, then in spirit. The Stay Order did not stay the taking of depositions only; it stayed *all* discovery." *Id.* (emphasis in original). Although Judge Johnson determined that the sanctions Judge Garcia recommended were excessive (monetary sanctions and preclusion of witness's testimony), he required the plaintiffs to pay the cost of the witness's deposition as the appropriate sanction. *Id.* at *4.

The plaintiffs appealed to the Tenth Circuit. *Martinez v. Carson*, 697 F.3d 1252 (10th Cir. 2012) ("*Martinez-10th*"). The Tenth Circuit noted that as a sanction, "the district court simply ordered the parties to proceed with the Rule 56(f) deposition of Lt. Camacho, with Plaintiffs bearing the costs they would already have expended had they complied with the

magistrate judge's order in the first place." *Id*. at 1257. The court then concluded, "[w]e see no abuse of discretion in this minimal discovery sanction." *Id*. In reaching this conclusion, the Tenth Circuit rejected the plaintiffs' contentions that they had a First Amendment right to conduct the interviews, reasoning that "they did not simply exercise their First Amendment right to participate in settlement discussions. Rather, they obtained deposition-like evidence they then attempted to use precisely like a deposition in their summary judgment pleadings." *Id*. The Tenth Circuit also rejected the plaintiffs' due process claim that they did not have notice the interviews were sanctionable. *Id*. As the Tenth Circuit noted, Judge Garcia's Stay Order "clearly stayed 'all discovery'" and "he even precisely decided the issue of whether other defendants could continue with discovery in the negative." *Id*.

The Tenth Circuit found Judge Garcia's use of the term "all discovery" to be a significant factor in concluding the plaintiffs were placed on sufficient notice that conducting sworn, recorded interviews of the City Defendants during a discovery stay, and then using transcripts of those interviews like deposition transcripts, would violate Judge Garcia's stay order. *See id*. at 1256 (highlighting the word "all" in noting that Judge Garcia ordered "that *all* discovery in this case be stayed."); *id*. at 1257 (noting that Judge Garcia's order applied to "all discovery" in the same paragraph it found that plaintiff was put on adequate notice). In the present case, although the Court's discovery stay order uses the term "discovery" rather than "all discovery", the Court granted Defendant's motion to stay "all discovery". *See, e.g.*, Docs. 79, 80. Thus, the *Martinez* line of cases provides some support to Defendant's argument that the Court's discovery stay order notified Plaintiff that she could not through some other mechanism obtain information the Court precluded her from obtaining under the Federal Rules of Civil Procedure.

Moreover, although the opinions of Judge Garcia and Judge Johnson in *Martinez* are not binding, the Tenth Circuit's published decision is binding. In that decision, the Tenth Circuit affirmed the district court's determination that the plaintiffs' interviews of the City Defendants, which *plaintiffs themselves* characterized as having been done outside the Federal Rules of Civil Procedure, violated Judge Garcia's stay order and that sanctions were appropriate. This published Tenth Circuit decision requires the Court to reject Plaintiff's argument that the Federal Rules of Civil Procedure provide a bright line between how a party may, and may not, obtain information while a discovery stay order is in place. The Tenth Circuit's decision in *Martinez-10th* demonstrates that an order staying all discovery can reach the gathering of information through a mechanism outside the Federal Rules of Civil Procedure. As the above examples of looking at a weather report or looking at the condition of a sidewalk during a discovery stay demonstrate, however, although *Martinez-10th* indicates that a discovery stay order can reach beyond the Federal Rules of Civil Procedure, it does not define the extent of that reach.

And, several factors exist that distinguish the *Martinez* lines of cases from the present case. First, just before the plaintiffs in *Martinez* proceeded with deposition-like interviews of parties in the case, Judge Garcia had written about the importance of including all parties in the discovery process. *Martinez-LG*, No. 08-1046 WJ/LFG, CM/ECF Doc. 98 at 4. The Court issued no similar order in the present case.

Further, excluding a party from deposition-like interviews has more potential to create harm than excluding a party from a request-for-production-like inquiry (especially when the entity receiving the IPRA request is also a party in the federal case). The Tenth Circuit noted in *Martinez-10th*, "[t]hese interviews proceeded essentially like depositions." 697 F.3d at 1257. The difference between deposition-like interviews and other forms of information gathering during a

discovery stay also mattered to Judge Johnson. He stated that had plaintiffs' counsel just prepared a traditional form of an affidavit from the contents of the taped statement, plaintiff's counsel could have avoided the "legal ruckus" and "fall-out caused by Plaintiffs' actions." *Martinez-WJ*, 2010 WL 11590674 at *3.[8] Judge Garcia also noted specific harms engaging in deposition-like interviews outside the Federal Rules of Civil Procedure could cause: "Defendants Carson and Mangin, along with their attorneys, received no notice of these sworn and recorded interviews and were clearly not in attendance. Thus, they had no opportunity to object to questions, cross-examine those Defendants, rehabilitate their testimony, or take steps to protect the interests of their own clients." *Martinez-LG*, No. 08-1046 WJ/LFG, CM/ECF Doc. 98 at 5-6.

Here, issuing an RFP-like request outside the Federal Rules of Civil Procedure does not threaten to cause the same harms as conducting deposition-like interviews of parties to the lawsuit—the threat of prejudice to the party left out of a discovery process is much greater when the discovery process in question is the deposition of a party to the case. In the interview situation, counsel for the non-interviewing co-defendants is unable "to ensure that the case does not develop in a misleading or slanted way that causes prejudice to their position." *Id*. at 6 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)). In contrast to the dynamic and unpredictable flow of depositions and interviews, obtaining documents through IPRA is a relatively static process that presents a lesser threat of turning in an unexpected direction.

One can argue, however, that the difference between violating a discovery stay order by conducting deposition-like interviews during the stay and violating a discovery stay order by

---

[8] Obtaining an affidavit does not always involve information gathering; sometimes an affidavit simply sets forth information already known. In *Martinez*, however, it is likely that interviews of party opponents involved information gathering as well as the documenting of information already known.

issuing RFP-like IPRA requests during the stay goes to the degree of the violation, not the fact of the violation. Indisputably, Plaintiff's request for certain documents from NMCD through IPRA is similar to Plaintiff's Rule 56(d) request for production of documents that the Court rejected. Thus, there is some appeal to Defendant's argument that if the deposition-like interviews in the *Martinez* line of cases violated a court's discovery stay order, so should the RFP-like IPRA requests in this case. In both situations, a plaintiff went outside the Federal Rules of Civil Procedure to obtain the same information a court specifically ruled the plaintiff could not obtain through the Federal Rules of Civil Procedure.

The Court, however, sees obtaining documents through the formal IPRA process (a statutorily created independent mechanism for obtaining information) as different from engaging in clandestine deposition-like interviews. The plaintiffs in *Martinez* did not avail themselves of a formally recognized mechanism to obtain the information they sought. Instead, they conducted a deposition-like interview of a party, excluded other parties to the lawsuit from the interview, declined to depose the interviewed party (already having obtained the sworn testimony they desired), and then attempted to use the transcript of the "non-deposition interview" just like they would use a deposition transcript. In other words, the *Martinez* plaintiffs essentially conducted a deposition after receiving an order staying discovery. Here, the existence of a separate formal mechanism to obtain information outside the Federal Rules of Civil Procedure provides Plaintiff some protection. Given New Mexico's statement that IPRA is designed to allow any person to obtain information about state-government activity for any reason, it was reasonable for Plaintiff to believe that availing herself of this separate formal mechanism outside the Federal Rules of Civil Procedure would not violate the Court's discovery stay order. Said another way, Plaintiff

here gathered information according to a statutory right whereas no such right existed to support the *Martinez* plaintiffs' deposition-like interviews.

Another important distinction between this case and *Martinez* deals with how the information sought was used. In *Martinez*, the plaintiffs disclosed information they obtained during their deposition-like interviews for the first time as an exhibit to their response to a summary judgment brief. Here, Plaintiff obtained the IPRA information from Defendant NMCD and so Defendant NMCD, and all other Defendants (who are represented by the same attorney), were already in possession of the information Plaintiff obtained through IPRA.[9] Further, at oral argument Plaintiff acknowledged her continuing duty to disclose Rule 26(a)(1) information. Doc. 130 at 95:19-25. Therefore, the unfair surprise that existed in *Martinez* does not exist in the present case.

How information sought was used was also an important consideration for the Tenth Circuit and Judge Johnson. Language from the opinions of the Tenth Circuit and Judge Johnson in *Martinez* indicates that the crucial question in deciding whether a party violated a discovery stay order is not whether the party independently obtained information during a discovery stay; instead, the crucial question is *how the party used* the information obtained.

The Tenth Circuit found significant that, "[c]ontrary to Plaintiffs' contentions, they did not simply exercise their First Amendment right to participate in settlement discussions. Rather, they obtained deposition-like evidence they then attempted to use precisely like a deposition in

---

[9] The Court recognizes that just because a government agency receives an IPRA request does not mean the attorney who represents that agency in another matter will learn of the request (as was the case here). Nonetheless, there is a distinction between the gathering of information the left-out party does not possess or control (like information gathered from interviews of uncooperating co-defendants) and the gathering of information that is otherwise available to the parties left out of the IPRA request.

their summary judgment pleadings." *Martinez-10th*, 697 F.3d at 1257. This language implies that the plaintiffs had a First Amendment right to conduct the interviews for some purpose other than using them like depositions. It appears that had the plaintiffs conducted the exact same interviews, but for purposes of settlement discussions rather than to obtain evidence for use at summary judgment, the Tenth Circuit would not have found a violation of the stay order.

Similarly, Judge Johnson noted that defense counsel in *Martinez* "acknowledged that Plaintiffs' counsel could have presented the same information obtained through the interviews in an affidavit form, which would have been acceptable under Rule 56(c) and not violated the Stay Order." *Martinez-WJ*, 2010 WL 11590674 at *3. Judge Johnson also stated:

> I am aware of no prohibition against counsel meeting informally to discuss potential settlement. I can understand that obtaining the statements of certain defendants would be helpful in a civil rights case to evaluate the strength of the case. I can also understand that in contemplating dismissal for the City Defendants, Plaintiffs' counsel would be interested in obtaining the statements of these individuals under oath, particularly if those individuals are potential witnesses for trial. However, counsel did not use the statements for investigatory or settlement purposes alone.

*Martinez-WJ*, at *3. This language indicates that, had plaintiffs not attempted to use statements from the interviews the same way they would have used statements from a deposition, Judge Johnson likely would not have imposed a sanction.

Here, Plaintiff has not yet used any of the information gathered through her IPRA request to advance her lawsuit and has represented that she will not do so without first timely disclosing the information she intends to use. *See* Doc. 104 at 13 (Plaintiff's response brief, indicating that the IPRA-requested records would not be available in time to inform briefing on the pending dispositive motions); Doc. 130 at 95-6 to 96:15, 97:7-14 (oral argument transcript where Plaintiff's counsel indicated the shift logs were disclosed with prior motions and that Plaintiff would continue to meet her disclosure requirements). As such, while the *Martinez* line of cases

do lend some support to Defendant's argument, distinguishing factors lessen the relevance of the *Martinez* line of cases to the present case.

The other cases Defendant cites are less persuasive than *Martinez*. The Court's analysis of these other cases first returns to *Lowe*, where Magistrate Judge Lorenzo Garcia issued two separate relevant opinions. *See Lowe v. New Mexico ex rel. King*, No. Civ. 10-315 JH/LFG, 2010 WL 11619171, at *3 (D.N.M. Sept. 28, 2010), and *Lowe v. New Mexico ex rel King*, No. 10-315 JH/LFB, 2011 WL 13284675 (D.N.M. Oct. 3, 2011). The Court refers to the first opinion as "*Lowe I*" and the second opinion as "*Lowe II*".

As discussed above, in *Lowe I*, the court found that the plaintiffs' IPRA request violated a discovery stay order. *Lowe*, 2010 WL 11619171, at *3. In so holding, the court looked to IPRA's exceptions under NMSA § 14-2-1(A) – i.e., those times when a person does not have a right to inspect public records. *Id.* at *3. The court looked specifically at the last exception – "every person has a right to inspect public records of this state except as otherwise provided by law" – and the non-statutory exception called the "rule of reason." *Id.* at *3. The court found that, given the important public policy concerns for staying discovery while an issue of immunity is pending, those two exceptions applied to prevent the plaintiffs from obtaining records while the stay was pending. *Id.* at *3.

The court's reasoning in *Lowe I* no longer applies, as the court in *Delgadillo v. Dorman* explained. No. Civ. 13-1188 WJ/KK, 2014 WL 12785149 (D.N.M. Nov. 25, 2014). In *Delgadillo*, the court stayed discovery after the defendants filed a motion for summary judgment raising qualified immunity. *Id.* at *1. Prior to the entry of that order, the plaintiff submitted an IPRA request to NMCD, who at that time was not a party to the lawsuit (having been previously dismissed by the plaintiff). *Id.* at *1. The defendants filed a motion for protective order, asking

20

the court to excuse the defendants and non-party NMCD from responding to the IPRA request. *Id.* at \*2. In rejecting the defendants' request, the court considered whether IPRA's exceptions under NMSA § 14-2-1(A) provided grounds to excuse NMCD from responding to the IPRA request. *Id.* at \*3. Crucial to the court's analysis was consideration of a New Mexico Supreme Court case decided after *Lowe I*. The court read *Republican Party of New Mexico v. New Mexico Taxation and Revenue Department* as abolishing the "rule of reason" and as defining IPRA's catch-all "as otherwise provided by law" exception such that a federal court's stay order in a qualified immunity case does not excuse an IPRA request. *Delgadillo*, 2014 WL 12785149, at \*4-5 (citing *Republican Party of N.M. v. N.M. Taxation & Rev. Dep't*, 2012-NMSC-026, ¶ 16, 283 P.3d 853). This intervening New Mexico Supreme Court decision, the *Delgadillo* court held, made the basis for *Lowe I*'s holding no longer applicable. *Id.* at \*5.

A reasonable person in Plaintiff's position could read *Delgadillo* as permitting an IPRA request even during a stay of discovery. Given *Delgadillo*'s analysis of *Lowe I*, the Court cannot find that *Lowe I* provided Plaintiff with reasonable notice that her discovery request would violate the Court's discovery stay order.

In *Lowe II*, Judge Garcia stayed the federal case for a second time after the defendant's second assertion of immunity. Simultaneously, the plaintiffs' state court action, alleging that the New Mexico Attorney General's Office wrongly rejected their IPRA request based on the federal discovery stay order, moved forward on appeal after the state district court ruled in the plaintiffs' favor. *Lowe*, 2011 WL 13284675 at \*1-2. In the federal action, the defendants again asked the court to hold plaintiffs' counsel in contempt for violating the stay order. *Id.* at \*3. Judge Garcia found that the plaintiffs' "actions in making the identical discovery request via the IPRA request

constitute an improper 'end run' to avoid the stricture of the federal court stay order." *Id.* at *3.

He elaborated

> In the context of ongoing federal litigation where specific discovery was denied a
> party due to a court-imposed stay, the use of an IPRA request to obtain the same
> information is improper. In this context, the IPRA is a discovery device. The
> Court cannot condone Plaintiffs' use of the IPRA to obtain specific records where
> a discovery stay was in place.

*Id.* at *3. The presiding judge overruled the plaintiff's objections to this holding. *See Lowe v.
New Mexico ex rel. King*, No. Civ. 10-315 JCH/LFG, 2012 WL 13080158 (D.N.M. Mar. 8,
2012).

Although Judge Garcia in *Lowe II* did not explain the source of his authority, it is logical
to infer that Judge Garcia relied on his analysis in *Lowe I*. If this inference is correct, *Lowe II*,
like *Lowe I,* has been undermined by the New Mexico Supreme Court's intervening decision in
*Republican Party* and Judge Kirtan Khalsa's decision in *Delgadillo*. If this inference is not
correct, the persuasive value of *Lowe II* is undermined by its failure to provide an alternate
source for its authority. As such, *Lowe II* provided no more notice to Plaintiff than did *Lowe I*.

Like *Lowe I* and *Lowe II*, another case on which Defendant relies, *Monarque v. City of
Rio Rancho*, No. Civ. 11-135 MV/KBM, 2011 WL 13285718, at *4 (D.N.M. May 20, 2011),
was decided before the New Mexico Supreme Court decided *Republican Party*. In *Monarque*,
the district court declined to issue a protective order barring the plaintiff from making an IPRA
request because that request was made before the court stayed discovery. *Id*. The district court
wrote, "[a]bsent such an order, the Court finds there is no basis upon which to deny Plaintiff's
right to obtain public information under IPRA." *Id*. To the extent this language implies that the
outcome would have been different had a discovery stay order been in place, it is not persuasive

because *Monarque* relied on *Lowe* and *Lowe*'s reasoning is no longer applicable given the state court decision in *Republican Party*.

Another case Defendant cites, *Shaw v. Granvil*, No. Civ. 14-1078 SCY/KBM, 2016 WL 10592267 (D.N.M. Feb. 12, 2016), was decided after *Republican Party*. The court in *Shaw*, however, had no occasion to address the issue presently before the Court. The question before the court in *Shaw* was whether the plaintiff should be precluded from using at trial information she obtained and disclosed after the period allowed for discovery closed. *Id*. at *3. The court concluded the plaintiff was justified in obtaining and disclosing information learned after the close of discovery because the defendant failed to provide this information as part of his written discovery (even though it was responsive to plaintiff's discovery requests) and the plaintiff did not become aware of the deficiency in the defendant's written discovery responses until the defendant's deposition. *Id*. In its decision, the court specifically noted that *Lowe* was not applicable because "a discovery stay has not been issued in this case and Defendant's failure to supplement his earlier interrogatory responses after the close of discovery prompted Plaintiff to file the IPRA request." *Id*. In briefly noting why *Lowe* was not applicable, the court did not infer that the outcome would have been different if a discovery stay had been in place. To the contrary, because the close of the discovery period acted similarly to a discovery stay order and because the *Shaw* court nonetheless allowed the plaintiff to use the IPRA information she obtained during that period, *Shaw* lends more support to Plaintiff's argument than it does to Defendant's.

Further on Plaintiff's side of the balance, several non-binding federal opinions contain language that would suggest to a reasonable person in Plaintiff's position that a stay of discovery in a federal case does not bar a person from making a state IPRA request. *See Noland v. City of*

*Albuquerque*, No. Civ. 08-056 JB/LFG, 2009 WL 5217998, at *1 (D.N.M. Oct. 27, 2009)

("IPRA provides a statutory right to request information, independent of the limits or constraints

on discovery provided in the Federal Rules of Civil Procedure."); *Quinones v. Bd. of Cty.*

*Comm'rs of Cty of Otero*, No. Civ. 08-0030 LH/KBM, 2010 WL 11590667, at *9 (D.N.M. Mar.

31, 2010) ("[T]he Court is not inclined to interpret the rights conveyed to individuals under the

IPRA as being limited by litigation."); *Delgadillo*, No. Civ. 13-1188 WJ/KK, 2014 WL

12785149, at *6 (denying defendants' motion for protective order from IPRA request and

stating, "NMCD's duty to respond to Plaintiff's request derives from IPRA, not from

Defendants' status as litigants in this case").

Although the Court's survey of out-of-district cases provide nothing on point, to the

extent those cases are useful they tend to support Plaintiff's position more than Defendant's. For

instance, in *Takiguchi v. MRI International, Inc.*, the court entered a stay of discovery under the

Private Securities Litigation Reform Act. No 2:13-cv-1183 JAD/VCF, 2014 WL 3105068, at *3

(D. Nev. July 7, 2014). That act provides that "[i]n any private action arising under this

subchapter, all discovery and other proceedings shall be stayed during the pendency of any

motion to dismiss, unless the court finds, upon the motion of any party, that particularized

discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15

U.S.C. § 77z-1(b)(1). The defendant argued the plaintiff violated the stay order in three ways:

issuing a subpoena to the SEC for documents related to the parallel civil enforcement action,

obtaining records from a third party, and collaborating with the SEC on questions for a

deposition. *Takiguchi*, 2014 WL 3105068, at *3. The court found no violation of the stay order

because "[e]ach of the events Defendants object to involve either a third-party who is voluntarily

collaborating with Plaintiffs or a mechanism for obtaining information that does not constitute

discovery under the Federal Rules of Civil Procedure. This conduct is merely investigatory and is not prohibited by this court's orders or the Private Securities Litigation Reform Act." *Id.* at *6.

In *Kiskadee Communications (Bermuda) v. Father*, the court stayed discovery pending arbitration. No. 10-05277 WHA, 2011 WL 5085284, at *1 (N.D. Cal. Oct. 26, 2011). The plaintiff then sent subpoenas issued pursuant to Rule 45 to a third party. *Id.* The court found the subpoenas were a violation of the stay order because they were issued pursuant to the Federal Rules in the district court action. *Id.* The court, however, did not determine "whether other modes of obtaining third-party discovery pursuant to Bermuda law or the arbitration rules would have been proper." *Id.* The defendant requested sanctions under 28 U.S.C. § 1927,[10] which the court denied because Section 1927 requires a showing of recklessness or bad faith and the court did not find such a showing. *Id.* at *2. The *Kiskadee* court's focus on the distinction between information obtained through the Federal Rules of Civil Procedure and information obtained outside those rules is the same distinction Plaintiff argues the Court should make in the present case.

In sum, the Court finds that the weight of federal authority supports Plaintiff's position that she reasonably interpreted the Court's discovery stay order as not applying to her IPRA request.

---

[10] Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

### c. Plaintiff's IPRA requests do not interfere with the reason for the Court's stay order.

If Plaintiff's IPRA request obviously undermined the purpose of the Court's discovery stay order, the Court would also be more inclined to find Plaintiff violated the Court's order. The purpose of staying discovery once qualified immunity is raised is to relieve public officials from burdens attendant to litigation. *See Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (reasoning that because qualified immunity is an entitlement not to face the burdens of litigation, "[e]ven pretrial matters such as discovery are to be avoided if possible"); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) ("[Q]ualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation. Discovery should not be allowed until the court resolves the threshold question whether the law was clearly established at the time the allegedly unlawful action occurred." (internal citation omitted)). Reaffirming its long-held view that discovery should be stayed when qualified immunity is asserted, the United States Supreme Court in *Ashcroft v. Iqbal*, reasoned as follows:

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery" . . . . There are serious and legitimate reasons for this. If a government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the government . . . .

556 U.S. 662, 685 (2009).

Here, Plaintiff's IPRA requests do not burden Defendant Hernandez (or any other individual defendant who may be entitled to qualified immunity) and therefore do not interfere with the reason for the discovery stay. *See also Marin v. King*, No. Civ 12-448 WJ/LFG, 2013

WL 12330023, at *1 n.4 (D.N.M. June 6, 2013) (declining to exclude records obtained by a non-parties' IPRA request while discovery was stayed because "[t]he purpose of staying discovery pending resolution of a qualified immunity defense is to ensure that government officials remain free from the burdens of discovery" and "[t]his principle does not protect Defendants from the use of documents acquired by other means in resolving the very issue of qualified immunity"). The IPRA requests are not directed at Defendant Hernandez and so he is not required to respond to them or to participate in the response. *See Delgadillo*, 2014 WL 12785149, at *7 ("[T]he fact that Plaintiff's IPRA request is made to Defendants' employer does not require Defendants' participation in litigation, nor does it require Defendants to make an informed decision as to how they should proceed."). That Defendant Hernandez is not burdened by Plaintiff's IPRA requests is bolstered by the fact that his counsel was unaware of the requests and will take no part in responding to them in connection with his representation of Defendant Hernandez.[11] Doc. 105 at 5. Rather, the public entity, NMCD, is required to respond in the same manner NMCD would be required to respond if any other person made the same request.

True, NMCD is also a defendant in the present case and *Iqbal* holds that all discovery as to all defendants should be stayed upon the assertion of qualified immunity, even for those defendants not asserting the defense. *Iqbal*, 556 U.S. at 685. But NMCD, a state government agency and the party burdened, is not a public official entitled to assert qualified immunity and so not an entity the Supreme Court in *Iqbal* was concerned about burdening. Further, NMCD's

---

[11] Defendant points out that Plaintiff did not serve him, or counsel for Defendant Sanders, with notice of the IPRA requests. Doc. 102 at 5. Accordingly, at oral argument, he asserted that the Court should order Plaintiff, going forward, to provide notice to the other parties of any further IPRA requests she makes. Doc. 130 at 40:16 to 41:5. The Court need not define the parameters of when it would be appropriate to issue an order requiring the parties to provide notification of IPRA requests. Here, neither party requested such an order and the Court did not specifically restrict Plaintiff from seeking information through IPRA.

status as a defendant does not relieve it of its separate, state statutory duty to provide information on the official acts of public officers and employees. *See* NMSA § 14-2-7 ("[e]ach public body shall designate at least one custodian of public records who shall" receive and respond to requests). When discovery proceeds under IPRA, the governing public entity—the state of New Mexico—expressed no concern with burdening its public officials or the public officials of its local governments. To the contrary, in passing IPRA, the state has decided that the public's need for government information exceeds the government's need to protect its employees from the burden of producing that information. The Court finds nothing in *Iqbal* or its progeny that necessarily prevents a state (a separate sovereign) from deciding that its employees, and the employees of its local governments, must provide public information under its own laws, regardless of whether a federal court has decided the employee does not have to disclose the same information as part of a federal lawsuit.

### d.  Plaintiff's IPRA request was not unreasonable under standards of practice.

Defendant cites to no local rule and presents no evidence of standards of practice that would have placed Plaintiff on reasonable notice that she should not be obtaining IPRA records during a discovery stay. To the contrary, both parties indicate that plaintiffs in federal litigation frequently avail themselves of IPRA outside of the federal discovery process. Doc. 130 at 53:11 to 54:18, 76:17-24. Thus, to the extent this factor deserves a place on the scale, it weighs on the side of Plaintiff.

### e.  Plaintiff's IPRA request does not create one-sided discovery.

Defendant Hernandez raises one other objection to Plaintiff's IPRA request, which the Court rejects. Although the motion for sanctions is only directed at Plaintiff's July 9, 2021 IPRA requests, Defendant points out that Plaintiff has submitted 13 other IPRA requests without

28

copying counsel for Defendants. Doc. 102 at 5. Plaintiff's practice of submitting IPRA requests,

Defendant Hernandez argues, has in effect "created a one-sided, parallel discovery system that is

outside the limits imposed by the Federal Rules of Civil Procedure, outside the Court's purview,

and effectively outside the adversary process." *Id.* Defendant argues that, by using IPRA

requests, Plaintiff is able to "obtain[] documents and other items which she uses if they help her

position, and disregards in secret if they do not." *Id.*

What Defendant says is true. But this truth is not unique to IPRA. If a party obtained

documents and information through some other independent means, such as interviews or

internet searches, that party typically would use the information gathered if it helps and disregard

it in secret if it does not. Similarly, a party who consults an expert and receives an opinion

harmful to that party's case is not required to disclose this harmful information. *See* Fed. R. Civ.

P. 26 (a)(2)(A). A party's ability to withhold information (harmful or unharmful), however, is

limited by the Federal Rules of Civil Procedure. These Rules dictate the manner, scope, and

timing of mandatory disclosures. Accordingly, if Plaintiff has obtained documents through IPRA

that the Federal Rules of Civil Procedure require her to disclose, she remains bound by her duty

to supplement disclosures and responses. *See* Fed. R. Civ. P. 26(e). Further, in this case, because

Plaintiff's IPRA request is directed to NMCD, Defendant NMCD (who shares counsel with

Defendant Hernandez) already possesses the information provided. To the extent Plaintiff

intends to use any of that information in her case-in-chief at trial, the Federal Rules of Civil

Procedure and the Court's pretrial order will require Plaintiff to notify Defendant about the

specific information she intends to use in her case-in-chief. Thus, Plaintiff's IPRA requests are

not so inherently and obviously unfair as to place Plaintiff on notice that her use of IPRA would

violate the Court's discovery stay order.

## CONCLUSION

In sum, the Court finds that Plaintiff was not put on reasonable notice that submitting her IPRA requests would violate the Court's stay order. Likewise, the Court does not view Plaintiff as engaging in gamesmanship, i.e., taking advantage of the lack of a specific prohibition in the Court's order to justify obtaining information Plaintiff understood she should not be obtaining. Plaintiff's view that her IPRA requests provided an independent means of obtaining information not within the purview of the Court's discovery stay order was reasonable and, as such, is not sanctionable. For these reasons, the Court will not sanction Plaintiff.

As a final matter, Plaintiff asks for her fees and costs in responding to the motion for sanctions. Doc. 102 at 1. Although the Court is denying Defendant's motion, as set forth in this Order, Defendant's motion was not without legal support. Defendant's motion for sanctions was not frivolous and the Court finds it appropriate for each side to bear their own costs and fees associated with bringing and responding to the motion.

**IT IS THEREFORE ORDERED** that Defendant Hernandez' Motion for Sanctions Based on Violation of Court Orders (Doc. 102) is DENIED.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**