## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

BRITNEY ENCINAS,

      Plaintiff,

      v.                                   No. 1:20-CV-01005-WJ-SCY

JUSTIN SANDERS, CLAYTON TRUJILLO,
UBALDO HERNANDEZ, ROBERT GONZALES,
VICENTE FERNANDEZ, MARIANNA VIGIL,
and the NEW MEXICO CORRECTIONAL
DEPARTMENT,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT VICENTE FERNANDEZ'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT II BASED ON QUALIFIED IMMUNITY

**THIS MATTER** comes before the Court upon Defendant Vicente Fernandez's Motion

for Summary Judgment as to Count II Based on Qualified Immunity (Doc. 42), filed March 4,

2021. Having reviewed the parties' pleadings and the applicable law, this Court **DENIES** the

Motion.

## BACKGROUND

This suit stems from a series of alleged rapes of an inmate by corrections officer Justin

Sanders that occurred in 2018. In 2018, Defendant Vicente Fernandez was also a corrections

officer in the Springer Correctional Center's Security Threat Intelligence Unit. Parties do not

agree on the scope of his supervisory or investigatory duties within the prison.

Defendant Fernandez filed a Motion for Summary Judgment as to Count II of the Complaint. Count II is a Civil Rights Claim against various Defendants, including Fernandez, alleging that they breached their duties to supervise Defendant Sanders and take reasonable steps to limit the dangers he posed to inmates. It also claims that the Defendant Fernandez knew of Sanders's pattern of misconduct before he allegedly raped Plaintiff and nevertheless failed to properly investigate and report the allegations. It asserts that Defendants implemented and perpetuated customs within the facility that amounted to misconduct. Defendant Fernandez asserts a qualified immunity defense.

## **LEGAL STANDARD**

### I.     *Qualified Immunity*

Where an individual defendant asserts qualified immunity, the burden shifts: the plaintiff must come forward with sufficient evidence to show that the defendant violated a constitutional or statutory right, and that the right was clearly established at the time of the conduct. *McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir. 2010). The Court may decide the issues in any order. *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). As it pertains to the first prong, the Court will review the question of whether the defendant violated a constitutional right in light of the supported facts set forth by the Plaintiff. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) ("[W]e have reviewed the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law." (quoting *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001)); *Malone v. Bd. of Cty. Commissioners for Cty. of Dona Ana*, No. 16-2222, 2017 WL 3951706 (10th Cir. Sept. 8, 2017).

### II.     *Summary Judgment*

Summary judgment is appropriate if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Initially, the

moving party bears the burden of demonstrating the absence of a genuine issue of material fact.

*See Shapolia v. Los Alamos Nat'l Lab.*, 922 F.3d 1033, 1036 (10th Cir. 1993) (citations omitted).

Once the moving party meets its initial burden, the nonmoving party must show that genuine

issues remain for trial "as to those dispositive matters for which it carries the burden of proof."

*Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991)

(citation omitted). A fact is material if it could have an effect on the outcome of the suit.

*Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material

fact is genuine if the evidence presented could allow a rational jury to find in favor of the

nonmoving party. *EEOC v. Horizon/CMS Heathcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.

2000). A court is to view the facts in the light most favorable to the nonmoving party and draw

all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200

(10th Cir. 2007).

## DISCUSSION

I.     *Qualified Immunity*

Defendant Fernandez asserted that he is entitled to qualified immunity as a matter of law.

As such, the burden shifts to Plaintiff to show that, viewing the facts in the light most favorable

to her, the Defendant violated a constitutional right, and that the right was clearly established at

the time of the conduct. *See Himes*, 598 F.3d at 716. The Tenth Circuit has determined that "it is

clearly established that a prison official's deliberate indifference to sexual abuse by prison

employees violates the Eighth Amendment." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir.

2013). Thus, the Court will consider evidence of Defendant Fernandez's alleged behavior as it

relates to investigating prior instances of sexual misconduct in the prison as they give weight to

Plaintiff's argument that Defendant's actions created improper customs within the prison which led to her rapes. Moreover, despite Defendant's argument that acts which occurred after the rape cannot be considered, courts have recognized inadequate investigation into an abuse allegation as sufficient to state a civil rights claim when another recognized constitutional right was involved. *See Hann-Noggle v. City of Albuquerque*, 2014 WL 12618193, at *4 (D.N.M. 2014). Therefore, because Plaintiff has identified a recognizable constitutional right to be free from sexual abuse in connection with her failure to investigate claim, the Court will consider evidence of Defendant Fernandez's investigation into her own allegations. *See Belt v. Federal Bureau of Prisons*, 336 F. Supp. 3d 428, 439 (D.N.J. 2018) ("Plaintiff has a constitutional right to be secure in his bodily integrity and free from attack by prison guards. Because Plaintiff has identified a recognizable constitutional right in connection with his failure to investigate claim, the Court will permit the failure to investigate claim to proceed against the Defendants.").

Parties base their arguments on the "deliberate indifference" prong of the Eighth Amendment. *See Koerner*, 707 F.3d at 1188 ("[I]t is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment."). Deliberate indifference is displayed when the officer knows of and disregards an excessive risk of constitutional harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The officer must be aware of facts from which the inference could be drawn that a substantial risk of constitutional harm exists and he must actually draw the inference. *Id*. An officer will not be held liable if he responded reasonably to the risk. *Id*. at 844. Although deliberate indifference is a subjective inquiry, it can be inferred that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition. *Id*. at 842. "If the risk is obvious, so that a reasonable man would realize it, we might

well infer that [the prison official] did in fact realize it." *Id.* (quoting 1 W. LaFave & A. Scott,

Substantive Criminal Law, ' 3.7, at 335 (1986)). Inaction or failing to act in certain instances can

be enough to show that the defendant knowingly created a substantial risk of constitutional injury

when he fails to take reasonable steps to alleviate the known risk. *Koerner*, 843 F.3d 833, 848

(10th Cir. 2016). The Court will analyze whether Defendant Fernandez, based on the supported

facts set forth by Plaintiff, demonstrated deliberate indifference to the risk of sexual abuse within

the prison and to the violation of Plaintiff's constitutional rights in his investigation of her

claims.

Plaintiff alleges the following supported facts:

- When the alleged rapes occurred, Defendant Fernandez was a corrections
  officer in the Security Threat Intelligence Unit. Doc. 42. Part of his duties
  included investigating and reporting sexual abuse of inmates. Doc. 42 Ex. 2.

- In prior incidents of potential sexual misconduct, Defendant Fernandez
  investigated the situation and interviewed the inmates. He then reported the
  allegation to his supervisor and the on-duty Day Shift Commander. The
  Commander then notified the Warden and Prison Rape Elimination Act
  Coordinator, who contacted the New Mexico State Police to investigate the
  situation and referred the matter to the prison facility's internal investigations
  division. In some of these cases, Defendant Fernandez was interviewed by the
  in the NMSP and internal investigations division. Doc. 42.

- Inmate Sasha Dominguez alleges that in May of 2018, she was held in the
  holding area for three days. During that time, Defendant Sanders checked on
  her every half hour, turned the lights on and off, talked to her about playing

5

with genitals, and made comments about her breasts. She states that Officer Sanders told her to show him her breasts and masturbate for him. She claims that he then touched his genitals while looking at her breasts.

- In May of 2018, Dominguez reported this alleged sexual misconduct to Defendant Fernandez.[1] She states that Defendant Fernandez laughed at her and stated, "I heard about you and that you show your boobs to Sanders." He referred to Defendant Sanders as Dominguez's "boyfriend."[2] He did not provide any resources to Dominguez nor initiate an investigation on this claim. Doc. 105 Ex. 8.

- In 2018, Defendant Sanders allegedly acted in an inappropriate sexual manner towards inmate Stephanie Yazzie. She claims that he asked her questions about her sexual history, including whether she had ever "had sex with a Black person, and started telling [her] that it would be [her] dream to be with a White boy like him." She states that he asked her to confide her sexual fantasies to him and whether she ever dreamed about him. Additionally, Yazzie alleges that Sanders pressed his body against her for a minute and then kissed her twice on the mouth. On another occasion, he touched her side and butt. On yet another occasion, when Yazzie was released from the holding area, Sanders was disappointed she hadn't stayed in holding for longer

---

[1] Defendant argues that because the NMCD records show that inmate Dominguez was never in a segregation cell at any time during 2018, the Court should disregard Dominguez's affidavit. Human error or intentional concealment could account for the lack of a notation of Dominguez's alleged time in the holding area, which is a question for the jury. Moreover, this constitutes impeachment evidence but does not conclusively demonstrate that her account of Sander's behavior towards her is wholly untrue. As such, the Court does not find this to be a "blatantly contradicted" fact that warrants disposing of Plaintiff's supported fact. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

[2] Defendant argues that his reaction to Dominguez's allegations is "blatantly contradicted" by the record which he claims shows that he did not laugh when other inmates reported similar conduct. For obvious reasons, the Court rejects this argument.

because he told her he had a "surprise" for her. Sanders also began passing

Yazzie handwritten notes that contained sexual statements. Doc 105 Ex. 5.

- In June of 2018, Defendant Fernandez asked Yazzie if an officer was

   harassing or bothering her. She told him what she had experienced, including

   that she had received hand-written notes from Defendant Sanders. She wrote a

   sworn statement describing the contact. Defendant Sanders was then escorted

   off the property and Yazzie did not see him at the facility for some time. He

   had been placed on administrative leave. Defendant Sanders returned in the

   fall of 2018. Before his return, Defendant Fernandez warned Yazzie and told

   her that he didn't think Sanders should be working with female inmates. Doc.

   105 Ex. 4, 5; Doc 42 Ex. 2.

- Defendant Fernandez knew of at least four inmates who had made sexual

   abuse allegations against Defendant Sanders prior to Plaintiff's alleged rapes,

   some of which occurred in the holding area. Doc. 42 Ex. 2; Doc. 105 Ex. 7, 8.

- Defendant Fernandez exercised his own discretion when deciding whether to

   refer complaints he received for internal investigation. Doc. 105 Ex. 3, 4.

- In November of 2018, Defendant Fernandez received information that

   Plaintiff made an allegation of rape against Defendant Sanders. He became

   aware that she may have buried a shirt containing DNA evidence on it.[3] He

---

[3] Plaintiff filed an initial Response to this Motion. Judge Yarbrough authorized limited Rule 56(d) discovery and struck the Responses and Replies. Defendant argues that Plaintiff abandoned any argument relating to the search for the shirt because she discussed it in her first Response, but not in the second. The Court does not conclude the same, as her second Response specifically disputes the timeframe of when Defendant Fernandez became aware of her allegations by pointing to the K-9 search. *See* Doc. 105 pgs. 3-4.

partook in a K-9 search for the shirt.[4] Doc. 42 Ex. 2; Doc. 105 Ex. 6.

- Defendant Fernandez interviewed Plaintiff after the K-9 search. During the interview, Defendant Fernandez asked Plaintiff, "Are you fucking Sanders?" and "Are you messing around with Sanders?" He did not offer Plaintiff any medical or psychological treatment. He did not offer Plaintiff any support resources. Doc. 105 Ex. 3.

- Defendant Fernandez subjectively believed that Plaintiff exhibited positive body language when asked about inappropriate interactions with staff members. Doc. 42 Ex. 2.

- After the interview, when Plaintiff would see Defendant Fernandez, he would ask her "How's Sanders?" and laugh at her. Doc. 105 Ex. 3.

- Plaintiff never heard of any internal or external investigation initiated by Defendant Fernandez. Defendant Sanders continued in his same position. Doc. 105 Ex. 3.

- Four months after the alleged rapes, Plaintiff believed she may have become pregnant from the rapes and reported her condition to the medical staff. The nurse reported her rape allegations and Plaintiff was subsequently interviewed by the New Mexico State Police for the first time. Doc. 105 Ex. 3.

Plaintiff's supported facts demonstrate that Defendant exhibited deliberate indifference by failing to respond reasonably to risk that Defendant Sanders was sexually abusing inmates

---

[4] In light of Defendant's affidavit admitting to partaking in this investigation, the Court does not find his asserted fact that he was not aware of Plaintiff's allegations until February of 2019 because he had transferred units in December of 2018 to "blatantly contradict" the record such that Plaintiff's supported fact should be disregarded. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

and by failing to respond reasonably in investigating and reporting Plaintiff's allegations. As such, his argument for qualified immunity fails.

II.     *Summary Judgment*

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this instance, there are many disputes of material facts. Parties dispute the scope of Defendant's investigatory duties, when he became aware of Plaintiff's allegations, how he investigated Plaintiff's allegations, and how he handled investigations of other alleged sexual misconduct in the facility—all of which are central facts in proving an Eighth Amendment violation. Therefore, Defendant Vicente Fernandez's Motion for Summary Judgment as to Count II Based on Qualified Immunity is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE