IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRITNEY ENCINAS,

      Plaintiff,

      v.                                                       No. 1:20-CV-01005-WJ-SCY

JUSTIN SANDERS, CLAYTON TRUJILLO,
UBALDO HERNANDEZ, ROBERT GONZALES,
VICENTE FERNANDEZ, MARIANNA VIGIL,
and the NEW MEXICO CORRECTIONAL
DEPARTMENT,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT IV BASED ON QUALIFIED IMMUNITY**

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment as to Count IV Based on Qualified Immunity (Doc. 78), filed April 19, 2021. Having reviewed the parties' pleadings and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## BACKGROUND

This suit stems from a series of alleged rapes of an inmate by corrections officer Justin Sanders. Inmate Encinas subsequently filed a Complaint for Civil Rights Violations and Tort Claims (Doc. 1) against various staff members at the Springer Corrections Center—a women's prison facility located in rural New Mexico. At all times relevant to the Complaint, Defendant Clayton Trujillo was a corrections officer; Defendant Ubaldo Hernandez was a shift supervisor;

Defendant Johnny Trujillo was a shift supervisor; Defendant Vicente Fernandez was a corrections officer with investigatory powers; Defendant Shawn Rosenbarker was a Prison Rape Elimination Act Coordinator; Defendant Robert Gonzales was Chief of Security; and Defendant Marianna Vigil was the Warden.

Defendants, excluding Sanders, filed a Motion for Summary Judgment as to Count IV of the Complaint and asserted a qualified immunity defense (Doc. 78). In Count IV, Plaintiff alleges Defendants retaliated against her for exercising her First Amendment right to free speech and access to the courts. Specifically, she claims that after she was raped, she informed other inmates about what happened to her. Those or other inmates relayed her allegations directly to Defendants or to other staff members who notified Defendants. Plaintiff asserts Defendants then engaged in behaviors which resulted in her loss of privileges and benefits, exposure to further unsupervised contact with Defendant Sanders, and seizure of her belongings. As it relates to each Defendant's alleged retaliatory actions, Plaintiff claims Defendant Gonzales observed Plaintiff crying after the alleged rapes and refused her request to take a shower; Defendant Fernandez repeatedly mocked Plaintiff about the alleged rapes and failed to investigated her claims; Defendants Hernandez, Gonzales, and Vigil allowed Defendant Sanders to conduct an improper "shake down" of Plaintiff's cell and destroy her personal belongings; Defendants Gonzales and Vigil initiated a transfer of Plaintiff to another housing unit where she was no longer able to attend educational programs; and Defendants Gonzales and Vigil initiated a facility transfer of Plaintiff where she was placed on suicide watch and classified as a "Likely Sexual Aggressive Offender."

## DISCUSSION

Summary judgment is appropriate if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 922 F.3d 1033, 1036 (10th Cir. 1993) (citations omitted). Once the moving party meets its initial burden, the nonmoving party must show genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted). A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). The court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

When a defendant asserts a qualified immunity defense—as Defendants have here—the burden shifts to the plaintiff to sufficiently demonstrate that (1) she had a constitutional or statutory right that was clearly established at the time of the conduct; and (2) the defendant violated her right. *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010); *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009) (holding that the Court may decide the issues in any order). The Court must evaluate each factor in light of the supported facts set forth by the Plaintiff. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) ("[W]e have reviewed the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law." (quoting *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001))); *Malone v. Bd. of Cty. Commissioners for Cty. of Dona Ana*, No. 16-2222,

3

2017 WL 3951706 (10th Cir. Sept. 8, 2017). Accordingly, the Court addresses each prong in turn.

        I.       *Whether Plaintiff's Right is "Clearly Established"*

It is clearly established that the First Amendment bars retaliation for engaging in protected speech. *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). The critical question in this case is whether Plaintiff's supported facts demonstrate that she engaged in protected speech. Importantly, a large portion of the alleged retaliatory actions occurred before Plaintiff formally reported the rapes to prison authorities in February of 2019. As such, parties dispute whether Plaintiff engaged in constitutionally protected speech when she spoke with other inmates and accused Defendant Sanders of raping her. On one hand, Plaintiff claims the prison staff overheard the allegations from inmates and then engaged in retaliatory conduct against her. In response, Defendant argues a disclosure to a third-party is not protected speech, nor is a rumor spread by other inmates.

Inmates do not shed their First Amendment rights at the prison gates. Prisons, however, may curtail the constitutional rights of inmates, but only to the extent that such curtailment is consistent with institutional security. *Procunier v. Martinez*, 416 U.S. 396, 412-14 (1974). For instance, filing a grievance or lawsuit—and attempting or declaring an intention to file a grievance or lawsuit—is protected conduct, while making a false accusation against prison staff is not.[1] Moreover, raising concerns about safety or prison conditions is a constitutionally

---

[1] *Compare Lindell v. O'Donnell*, 2005 U.S. Dist. LEXIS 24767, at *84 (W.D. Wis. Oct. 21, 2005) (finding speech indicating an intention to file a complaint is constitutionally protected); *Meyer v. Bd. Of County Comm'rs*, 482 F.3d 1232, 1243 (10th Cir. 2007*)* (finding filing a complaint is protected speech); *with Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (concluding false accusations are unprotected).

protected activity, while organizing marches or group protests within a prison is not.[2] The rationale behind each of these curtailments is that the cost of limiting prisoners' rights is outweighed by the government's interest in preserving internal order and discipline, maintaining safe facilities, preventing escape and unauthorized entries, and rehabilitating prisoners. *Id.* at 412; *see also Bridges v. Gilbert*, 557 F.3d 541, 548 (7th Cir. 2009) ("Legitimate penological objectives include crime deterrence, prisoner rehabilitation, and internal prison security." (citing *Procunier*, 416 U.S. at 822-23)).

As it applies to the case at bar, this Court does not see how maintaining First Amendment protections in situations where an inmate confides in another inmate about potential abuse inflicted on her by a corrections officer would hinder institutional security. Rather, affording such constitutional protection would bolster security and safety by creating an atmosphere where inmates do not fear speaking up against such injustice. *See Bridges*, 557 F.3d at 552 ("Prisons have an interest in keeping the inmates as safe and secure as possible while imprisoned, and truthful speech that describes possible abuses can actually be quite consistent with that objective."). Additionally, considering the imbalanced power dynamics when prison staff abuse inmates, it is reasonable—if not expected—that an inmate would first turn to another inmate for advice, support, and guidance on the assault, rather than discussing the allegation or formally reporting it to a staff member—someone ingrained in the same group as the perpetrator. Absent any showing that restricting rights in these situations would augment security, it counters logic to in essence penalize inmates for confiding in another inmate rather than reporting to a staff member.

---

[2] *Compare Beatty v. Henshaw*, 826 Fed. Appx. 561, 564 (7th Cir. 2020) (stating that raising safety concerns is protected); *with Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) (differentiating certain types of petitioning from marches or group protests).

Furthermore, while making a report to a corrections officer clearly is constitutionally protected speech,³ a report does not lose its protection merely because it was made to a third party. In fact, in *Zarska v. Higgins*, an inmate's declaration to another inmate which prison staff later became aware of was found to be protected speech. 171 Fed. Appx. 225, 259 (10th Cir. 2006). Furthermore, contrary to Defendants' argument, a report does not lose its constitutionally-protected status solely for being made orally rather than in writing. *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("We are also unconvinced that the form of expression—i.e. written or oral—dictates whether constitutional protection attaches . . . We decline to hold that legitimate complaints lose their protected status simply because they are spoken. Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form."); *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (same). Based on Plaintiff's supported facts, the Court concludes she was in the early stages of pursuing a grievance, which is protected speech,⁴ when she initially discussed the situation with other inmates. Though Plaintiff subsequently formally reported the rapes, the Court notes this early discussion among inmates would be considered pursuing a grievance regardless of whether Plaintiff later decided against moving forward with a report. Therefore, the Court sees no reason to distinguish an oral declaration of the assault to another inmate from an oral declaration of the assault to staff. Because the right to report an assault—and even declaring an intention to report an assault—is protected, it follows that reporting an assault to another

---

³ *Meyer v. Bd. Of County Comm'rs*, 482 F.3d 1232, 1243 (10th Cir. 2007) (concluding that filing a criminal complaint with law enforcement is protected speech); *Fogle v. Pierson*, 435 F.3d 1252, 1263 (10th Cir. 2006) (finding an inmate's complaint about his placement in segregation was protected speech); *Beatty v. Henshaw*, 826 Fed. Appx. 561, 564 (7th Cir. 2020) (finding an inmate's report and request for protection from guards was protected speech).
⁴ *Fabricio v. Griffin*, 2019 U.S. Dist. LEXIS 36244, at *17 (S.D.N.Y. Mar. 6, 2019) (stating that pursuing a grievance is protected speech).

inmate is protected. In other words, protecting the right to report a rape to another inmate logically stems from the right to report a rape.

Defendants argue that when confronted by staff in November of 2018, Plaintiff denied she had been raped, which Defendants argue weighs against any showing that she engaged in protected speech. *See* Doc. 42 Ex. 2. First, at this stage in the proceedings, the Court accepts Plaintiff's supported facts, which indicate she replied "no" when Defendant Fernandez asked her whether she was "fucking Sanders," which is starkly different than denying she had been raped. Doc. 105 Ex. 3. Second, denying the ability to report assaults and making threats designed to deter future speech violates the First Amendment. *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996). During the interview with Plaintiff, Defendants allegedly joked about Plaintiff "fucking" and "messing around" with Sanders and then did not offer her any medical, psychological or support resources. Doc. 105 Ex. 3. The Court views this behavior as an alleged attempt to hinder, threaten, or intimate Plaintiff into not moving forward with reporting the rapes. Third, even if the Court accepted Defendants' purported fact that Plaintiff denied she had been raped during this interview, the Court would not necessarily view that fact as detrimental to Plaintiff's case, as it would be reasonable to deny such a question in light of Defendants' mocking behavior.

In conclusion, it would be counterintuitive to find that inmates have First Amendment protections when they formally report an assault, but not when staff happen to get wind of the allegations before a formal report has been made and take preemptive actions to discourage the report. An inmate is likely to be dissuaded from filing a complaint when her intention to do so is met with retaliation, and the holding Defendants seek in this case would encourage such behavior. *Lindell v. O'Donnell*, 2005 U.S. Dist. LEXIS 24767, at *84 (W.D. Wis. Oct. 21, 2005)

7

("If anything, retaliatory actions taken in advance of the exercise of constitutionally protected rights are more likely to inhibit the exercise of those rights than are subsequent acts of retaliation."). Indeed, "[i]f inhibition is the evil the law seeks to avoid, there is no reason to find anticipatory retaliation more permissible than reactive retaliation." *Id.* The motivation for a corrections officer to retaliate when an inmate formally reports an assault and to retaliate when the officer overhears an inmate's allegation to another inmate is the same: "the official's desire to punish the prisoner for wanting to challenge the official's misconduct. It would be ironic to say the least if a prison official could avoid liability by retaliating so swiftly that the prisoner was unable to seek redress in time." *Ripp v. Foster*, 2010 U.S. Dist. LEXIS 145811, at *4 (W.D. Wis. Sept. 21, 2010).

Therefore, the Court determines Plaintiff's supported facts illustrate she engaged in protected speech and her constitutional right was clearly established.

II. *Whether Plaintiff Set Forth Supported Evidence to Show Defendants Violated Her Right*

Having found in Plaintiff's favor regarding the first prong of qualified immunity, the Court now turns to the second: whether Plaintiff has set forth sufficient facts to show Defendants violated her constitutional right. Because Plaintiff argues Defendants retaliated against her for her rape allegations, the Court's analysis turns on the elements of retaliation: whether 1) Plaintiff engaged in constitutionally protected activity; 2) Defendants engaged in a responsive action that would "chill a person of ordinary firmness from continuing to engage in that activity;" and 3) Defendants' actions were "substantially motivated as a response to [her] exercise of constitutionally protected conduct." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). In Section I, the Court found Plaintiff demonstrated she engaged in constitutionally protected

8

activity, thereby satisfying the first element. Therefore, the court addresses below whether Plaintiff has set forth sufficient facts to establish that each individual defendant's behavior satisfies the second and third elements. At the end of the day, the Court finds Plaintiff substantiated enough facts to evidence all three elements—and, thus, overcome the defense of qualified immunity—only against Defendant Fernandez.

    *a.*      *Defendant Fernandez*

Plaintiff states that on or around November 15, 2018, Security Threat Intelligence Unit officers Olguin, Criswell, and Fernandez heard from an inmate informant that Plaintiff buried a shirt containing DNA evidence from some type of sexual encounter with Defendant Sanders. Doc. 42 Ex. 2. Defendant Sanders also informed Defendant Fernandez of the rape accusations against him. Doc. 108 Ex. 1. Officers Olguin and Fernandez utilized a K-9 dog to search the facility's yard for the shirt but did not locate anything. Doc. 42 Ex. 2. After the yard search, Officers Criswell and Fernandez questioned Plaintiff about the allegations. Defendant Fernandez asked Plaintiff, "Are you fucking Sanders?" Plaintiff answered "no" and "made it clear that [she] did not want to talk about what happened in holding." Doc. 105 Ex. 3. Defendant Fernandez admitted to subjectively believing Plaintiff exhibited positive body language when asked about inappropriate interactions with staff members. Doc. 42. Ex. 2. He did not ask Plaintiff whether she wanted to make a formal complaint. He did not offer her medical, psychological or other support resources. Doc. 55 Ex. 2; Doc. 105 Ex. 3; Doc. 42 Ex. 2. After that meeting, when Plaintiff would see Fernandez, he would laugh at her and ask "How's Sanders?" Doc. 105 Ex. 3.

    Considering Defendant Fernandez's position of authority in conjunction with the fact that the perpetrator was another corrections officer, this alleged harassment of an inmate would "chill a person of ordinary firmness" from continuing to pursue an assault report. Such harassment,

9

mockery, and dismissive attitude by a corrections officer towards a serious allegation of rape would deter a reasonable person from further pursuing a grievance or report against another corrections officer, especially if that person, like Plaintiff, had only a few months of her sentence left to serve.

Additionally, Defendant Fernandez's actions were "substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Gee*, 627 F.3d at 1189. This element "requires the inmate to prove that but for the retaliatory motive, the incidents to which [s]he refers . . . would not have taken place." *Brooks v. Gabriel*, 736 F. App'x 927, 932 (10th Cir. 2018). Indeed, Defendant Fernandez was clearly aware of a rumor regarding Plaintiff and Defendant Sanders as evidenced by his investigation and interview with her. His alleged questioning and subsequent mocking of Plaintiff regarding a relationship with Defendant Sanders were directly in response to that rumor. Without his knowledge of it, his alleged retaliatory behavior would not have occurred.

Therefore, Plaintiff has set forth sufficient supported facts to show Defendant Fernandez engaged in a responsive action that would "chill a person of ordinary firmness" from continuing to engage in that activity, and his actions were "substantially motivated as a response to [her] exercise of constitutionally protected conduct." *Gee*, 627 F.3d at 1189. As such, his request for qualified immunity is hereby **DENIED**.

b. *Defendant Hernandez*

Plaintiff states when Defendants learned she was going to renew her complaints against Defendant Sanders in February of 2019, Defendant Hernandez, among others, permitted Sanders to personally "shake down" her cell. However, the evidence Plaintiff points to does not specifically implicate Defendant Hernandez. She references two transcripts where Sanders states,

"We conducted a big group shakedown," but he does not mention Hernandez. Doc. 108 Ex. 1, 2. There is not a shred of evidence in Plaintiff's cited exhibits to show how, if at all, Defendant Hernandez was involved in the shakedown, and the Court is not inclined to make any arguments for Plaintiff. Therefore, Plaintiff has not shown Defendant Hernandez retaliated against her. As such, Defendant Hernandez's request for qualified immunity is **GRANTED**.

   c. *Defendant Vigil*

Plaintiff claims that at some point, she asked Defendant Vigil why she allowed "perverts" to remain employed at Springer, and Vigil responded she was too short-staffed to fire them. Doc. 106 Ex. 14. While this allegation is certainly concerning, Plaintiff fails to show how Vigil's alleged response was a retaliatory act against her for exercising her right to free speech.

Next, Plaintiff claims prior to the alleged rapes, she was housed in Unit 3 which was a "program pod" that allowed inmates to receive good time credit. Doc. 108 Ex. 4, 5. While there, she attended educational programs to obtain her GED. Doc. 108 Ex. 3, 4, 5. Plaintiff met with Defendant Vigil and Defendant Gonzales on November 6, 2018—a week after the alleged rapes. Doc. 108 Ex. 6. A few days after the meeting, she was transferred to Unit 5 where she could no longer attend school and instead performed work as a tool clerk. Doc. 108 Ex. 5; Doc. 64 Ex. 3. Importantly, defendants may only be held liable for particularized, personal, and individualized conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Dobbs v. Richardson*, 614 F.3d 1185, 1200 (10th Cir. 2010). While being removed from educational programs and transferred to a pod of inferior quality could certainly "chill a person of ordinary firmness," Plaintiff fails to set forth specific evidence indicating Defendant Vigil was in charge of inmate transfers and housing. Merely being the Warden does not mean Vigil approved, knew about, or was involved in housing matters rather than delegating such tasks to supervisory officers. The Court will not

11

jump to conclusions regarding Vigil's job duties or knowledge without an iota of cited evidence addressing these matters. Moreover, Plaintiff does not even claim she told Defendant Vigil about the alleged rapes during their meeting. She therefore failed to evidence how these acts form a valid retaliation claim. In a similar vein, Plaintiff asserts Defendant Vigil permitted Sanders to shake down Plaintiff's cell after becoming aware of her rape, but fails to set forth any evidence revealing Defendant Vigil knew about or approved this shake down. Therefore, Defendant Vigil's request for qualified immunity is **GRANTED**.

    d. *Defendant Gonzales*

Plaintiff claims Defendant Sanders raped her on October 28, 2018. That night, she was crying and asked Defendant Gonzales if she could take a shower. He allegedly refused her request. Doc 105 Ex. 3. Merely asserting Defendant Gonzales saw Plaintiff crying and did not permit her to take a shower fails to show that he knew she had been raped at the time of her request and refused the request in retaliation.

Next, Plaintiff states she met with Defendant Gonzales and Defendant Vigil on November 6, 2018. Doc. 108 Ex. 6. She claims she was then transferred to another pod but offers no connection between Defendant Gonzales's authority over housing matters and Plaintiff's transfer, nor does she assert she told Defendant Gonzales about the alleged rapes during their meeting. Additionally, she states Defendant Gonzales allowed Defendant Sanders to "shake down" Plaintiff's cell in February of 2019, but does not establish how, if at all, Defendant Gonzales was involved in the "shake down." She also offers no more than a conclusory statement that this "shake down" was performed in response to her allegations. Therefore, Plaintiff has not established Defendant Gonzales retaliated against her and his request for qualified immunity is **GRANTED**.

e. *Clayton Trujillo, Johnny Trujillo, & Shawn Rosenbarker*

Perplexingly, Plaintiff does not mention any alleged retaliatory actions of Clayton Trujillo, Johnny Trujillo, or Shawn Rosenbarker in her Response. The Court will not dig through the docket to track down evidence to construct an argument for Plaintiff. Therefore, the Court will treat this argument as waived and **GRANTS** their requests for qualified immunity. *See Lunnon v. United States*, 2021 U.S. Dist. LEXIS 183074, at *16-17 (D.N.M. Sept. 24, 2021) (stating the Court will not consider an undeveloped argument that were merely "mentioned").

f. *Miscellaneous*

Plaintiff claims that in December of 2018, she was again left alone in the holding area with Defendant Sanders and forced to rely on him to access the phone to speak with her family. Doc. 105 Ex. 3. However, she directs this alleged act of retaliation at no particular defendant other than Defendant Sanders. Similarly, she points to no specific defendant in alleging that she spoke with New Mexico State Police on February 21, 2019 and was immediately placed on suicide watch, transferred to another facility, and classified as a "Likely Sexual Aggressive Offender." Thus, this argument fails to demonstrate a plausible claim of retaliation.

Plaintiff also asserts that at some point, Defendant Sanders reported Plaintiff's allegations to Defendants C. Trujillo, Hernandez, and Fernandez. One of those defendants also informed Defendant Gonzales. She claims "they" later told Defendant Sanders "she was making it all up." None of them made any documentation of the report, investigated it, or disciplined Sanders. *See* Doc. 108-1; Doc. 50 Ex. 1. Plaintiff did not exhibit how this failure to investigate would "chill a person of ordinary firmness" from continuing to pursue a formal report. She does not allege she knew Defendants accused her of "making it all up." She only states she never heard Defendants called the police or initiated a PREA investigation, and she did not follow up with any of the

13

defendants. An inference of unconfirmed inaction would not deter a reasonable person from pursuing a report. Furthermore, Plaintiff did not show how Defendants' failure to investigate was motivated by retaliation, rather than, say, a lack of evidence after the yard search and interview with Plaintiff. Therefore, this allegation does not form a valid retaliation claim.

## CONCLUSION

In sum, because Plaintiff has not set forth more than a conclusory allegation that Defendants Hernandez, Vigil, Gonzales, C. Trujillo, J. Trujillo, and Rosenbarker retaliated against her for exercising her right to free speech, there are no demonstrated genuine issues of material facts. *See* Fed. R. Civ. P. 56(c). Thus, the Motion for Summary Judgment as it pertains to these Defendants is hereby **GRANTED**.

However, Plaintiff has set forth supported facts that create a material dispute as to whether Defendant Fernandez retaliated against her for exercising her right to free speech—that is, whether he engaged in a responsive action that would chill a person of ordinary firmness from continuing to pursue a formal report of the alleged rape and whether his retaliatory action was substantially motivated as a response to Plaintiff's exercise of her right. Specifically, parties dispute when Defendant Fernandez became aware that Plaintiff accused Defendant Sanders of rape and what Defendant Fernandez said to Plaintiff during and after the interview. Therefore, the Motion for Summary Judgment as to Defendant Fernandez is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE